## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| AMERICAN VEHICULAR SCIENCES LLC, | § § § | NOS. 6:12cv404 MHS-JDL (LEAD) 6:12cv405 MHS-JDL |
| vs. | § § | 6:12cv406 MHS-JDL 6:12cv408 MHS-JDL |
| TOYOTA MOTOR CORPORATION, et al. | § § | 6:12cv409 MHS-JDL 6:12cv410 MHS-JDL |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Opposed Motion Pursuant to 28 U.S.C. § 1404(a) and Rules 21 and 42, Fed. R. Civ. P., (1) to Transfer all Claims Against the Toyota Defendants[1] to the Eastern District of Michigan and (2) to Sever and Stay Claims Against Gulf States Toyota Inc. (Doc. No. 19, No. 6:12cv404 (lead case); Doc. No. 15, No. 6:12cv405; Doc. No. 25, No. 6:12cv406; Doc. No. 15, No. 6:12cv408; Doc. No. 23, No. 6:12cv409; Doc. No. 25, 6:12cv410) ("Mᴛɴ").  The matter has been fully briefed (Doc. Nos. 79, 83 & 88, No. 6:12cv404).[2]  For the reasons stated below, Defendants' Motion is **DENIED**.

Also before the Court is the Toyota Defendants' Opposed Motion to Stay (Doc. No. 106, No. 6:12cv404 (lead case)).  Plaintiff has filed a response (Doc. No. 116), to which Defendants have filed a reply (Doc. No. 118).  Upon consideration of the parties' arguments, the Motion to Stay is **DENIED**.

---

[1] The Toyota Defendants include Toyota Motor Corporation; Toyota Motor Sales, U.S.A., Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; Toyota Motor Manufacturing, Texas, Inc.; Toyota Motor Manufacturing, Indiana, Inc.; and Toyota Motor Manufacturing, Kentucky, Inc.

[2] The briefing in the member cases incorporates by reference the briefing filed in lead case No. 6:12cv404.  The parties' briefs addresses each of the above-styled cases individually with regard to judicial efficiency, but seem to acknowledge that the arguments directed toward the remaining § 1404(a) factors are the same for each of the above-styled cases.

**BACKGROUND**

On June 25, 2012, Plaintiff American Vehicular Sciences LLC ("AMV") simultaneously filed seven[3] separate lawsuits against Defendants Toyota Motor Corporation; Toyota Motor Sales, U.S.A., Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; Toyota Motor Manufacturing, Texas, Inc.; Toyota Motor Manufacturing, Indiana, Inc.; Toyota Motor Manufacturing, Kentucky, Inc.; Gulf States Toyota, Inc.; and Southeast Toyota Distributors, LLC.[4]  On the same day, Plaintiff filed five simultaneous suits against BMW Defendants, alleging infringement of some of the same patents asserted in the above-styled cases.[5]

Each suit alleges infringement of various patents, all of which are a part of a common patent portfolio directed to "electronic sensors for automotive safety and telematics systems." MTN AT 1.  The majority of the asserted patents across all actions are related to patents that have already been litigated in the transferee forum, the Eastern District of Michigan. *Id.* at 2.  Some of the asserted patents claim priority to those litigated in the Eastern District of Michigan or claim priority to the same patent applications; others are parents to the prior litigated patents. *Id.* at 5.  As a result, some of the claim terms at issue in these matters have already been construed by the court in Michigan. *Id.* at 5.

Defendant Toyota Motor Corporation ("TMC")—the parent company of Toyota Motor Sales, U.S.A., Inc. ("Toyota USA"), Toyota Motor Engineering & Manufacturing North America, Inc. ("Toyota N.A."), Toyota Motor Manufacturing, Indiana, Inc. ("Toyota Indiana"), Toyota Motor Manufacturing, Texas ("Toyota Texas") and Toyota Motor Manufacturing, Kentucky ("Toyota Kentucky")—is headquartered in Japan. *Id.* at 1 n.1.  TMC is responsible for the research, development, and manufacturing of many U.S. bound vehicles. *Id.*  Toyota USA is

---

[3] One of the lawsuits, No. 6:12cv407, has since been dismissed (Doc. No. 108).
[4] Southeast Toyota Distributors, LLC has since been dismissed (Doc. No. 74).
[5] *See, e.g., American Vehicular Sciences LLC v. BMW Group, a/k/a BMW AG*, et al., No. 6:12cv411 (E.D. Tex.).

responsible for Toyota sales, marketing, distribution and customer service in 49 U.S. states.  *Id.*
Toyota N.A. is in charge of Toyota's engineering, design, research, development, and
manufacturing activities in North America.  *Id.*  Toyota Texas, Toyota Indiana and Toyota
Kentucky manufacture vehicles for nationwide sale.  *Id.* at 4.  Finally, Defendant Gulf States
Toyota ("Gulf States") is an independent entity contracted as an exclusive distributor of Toyota
vehicles in Arkansas, Louisiana, Mississippi, Oklahoma, and Texas; the Toyota vehicles
distributed by Gulf States are purchased from Toyota USA.  *Id.* at 1 n.1.

AMV is a Texas limited liability company with its sole office within the Eastern District
of Texas.  KEY DECL. AT 1, ATTACHED TO RESPONSE.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the
interest of justice, a district court may transfer any civil action to any other district or division
where it might have been brought."  28 U.S.C. § 1404(a).  The goals of § 1404(a) are to prevent
waste of time, energy, and money, and also to protect litigants, witnesses, and the public against
unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).
Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C.
§ 1404(a), but the court must exercise its discretion in light of the particular circumstances of the
case.  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda
Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).  The party seeking transfer must show good
cause for the transfer.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en
banc) ("*Volkswagen II*").  To show good cause, the moving party must demonstrate the
transferee venue is clearly more convenient.  *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice.  The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *Id.*

## DISCUSSION

## I.     Severance and Stay of Claims Against Gulf States

In the context of a motion to transfer, the court considers three factors to determine whether to sever claims: "(1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims."  *Shifferaw v. Emson USA*, No. 2:09cv54, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 28, 2010) (internal citations omitted).

Toyota seeks to sever and stay the claims against Defendant Gulf States because (1) the claims against Gulf States are peripheral to the claims against the Toyota Defendants; (2) adjudication of the claims against the Toyota Defendants will resolve the claims against Gulf States; and (3) the convenience factors dictate transfer of the claims asserted against the Toyota

Defendants.  MTN AT 14.  Defendants state that Gulf States is fully indemnified by Toyota USA as to the accused products and features at issue in these actions.  *Id.*

However, as will be discussed in more detail below, the convenience factors do not indicate that transfer to the Eastern District of Michigan would be clearly more convenient. Therefore, there is little, if any, reason to sever and stay the claims against Gulf States.  *See Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000) (stating the court has broad discretion in deciding whether to sever).  Accordingly, Defendants' request is denied.

## II.    Transfer

### a.  The Parties' Contentions

Chief among the Toyota Defendants' arguments is that considerations of judicial efficiency and economy dictate transfer.  MTN AT 4.  Defendants contend that because 22 of the 24 asserted patents are related to patents that have been litigated in the transferee forum, and further, because many of the disputed claim terms have already been construed in the Eastern District of Michigan, judicial efficiency warrants transfer.  *Id.* at 2.  Moreover, some of the patents asserted in the above-styled actions claim priority to the same patent applications as those previously litigated; claim priority to the patents-at-issue in the Michigan litigations; or are parents to the patents asserted in Michigan.  *Id.* at 5.  Thus, Defendants contend the transferee forum's familiarity with the patented technology and relevant prior art favors transfer.  *Id.* at 6.

Further supporting its motion to transfer is the location of technical proof in Michigan. Defendants maintain that its U.S.-engineering affiliate, Toyota Technical Center ("TTC"), conducts engineering design, development and testing of the accused features in Ann Arbor, Michigan.  *Id.* at 11; MINCE DECL. AT 1, ATTACHED TO MTN.  Further, two of Toyota's suppliers, Denso and Aisin, are located in Southfield, Michigan and Plymouth/Fowlerville, Michigan,

respectively; the Toyota Defendants maintain that Denso and Aisin helped develop or test some of the accused features.  *Id.* at 8, 12.  In addition, Defendant Gentex Corporation[6] ("Gentex") has facilities in Michigan.  *Id.* at 8.  Although the Toyota Defendants acknowledge that much of the technical proof is located in Japan, and other business and sales documents and witnesses are in California, Defendants maintain that the bulk of the technical documents and witnesses, including prior art inventors, are located in the transferee forum.  *See id.* at 9, 11-12.

As for the public interest factors, the Toyota Defendants maintain that these factors favor transfer.  In particular, Defendants argue that the median time from filing to trial is five months faster in the Eastern District of Michigan than the Eastern District of Texas.  *Id.* at 8.  Further, the local interest in the transferee forum is greater given that Toyota Technical Center and Toyota N.A. have facilities in Michigan, in addition to suppliers Denso and Aisin.  *Id.*

In response, AMV argues that none of the patents previously in suit in the Eastern District of Michigan are at issue in these cases.  RESPONSE AT 3.  Further, three separate judges in Michigan were involved in the various actions and the *Markman* decisions in those cases were issued eight, four, and three years ago.  *Id.*  Thus, neither the Michigan court or a particular judge has familiarity with the patents-at-issue.  *See id.*  Moreover, while some claims terms in dispute in these actions overlap with the terms construed in the Eastern District of Michigan, those particular terms were construed in light of the specification and intrinsic evidence unique to each of the previously asserted patents.  *See id.* at 4-8.  Finally, AMV contends judicial efficiency would be better served by denying transfer because at least five other lawsuits involving BMW Defendants and many of the same patents are co-pending in this District.  *Id.* at 2.

---

[6] Gentex was dismissed on January 7, 2013 (Doc. No. 69, 6:12cv404) and was involved in only two of the six cases (Nos. 6:12cv406 and 6:12cv410) the Toyota Defendants move to transfer.  It is of note that Gentex did not join in the transfer motions filed in its respective cases.

Further, AMV disputes the location of technical sources of proof.  Specifically, AMV contends that the majority of documents are located in Japan, and any design and manufacturing activities also took place in Japan.  *Id.* at 13.  Moreover, the Toyota Defendants have failed to identify any specific technical witnesses in Michigan, and further, Defendants have exaggerated the ties to the transferee forum; for example, Toyota N.A. is a Kentucky corporation headquartered in Kentucky.  *Id.* at 11.

Finally, AMV takes issue with the statistics Defendants cite showing that the transferee forum disposes of cases faster than the transferor forum.  First, Defendants cite statistics for non-patent cases.  *Id.* at 10.  Second, AMV provides statistics showing that the Eastern District of Texas has a shorter median time to trial (by 2 months) for (non-patent) cases than the Eastern District of Michigan. *Id.*

### b.  The "Clearly More Convenient" Standard

While the Fifth Circuit does not independently consider the plaintiff's choice of forum as a "paramount consideration" or afford it "great" or "substantial" weight, "it is nonetheless taken into account as it places a significant burden on the movant to show good cause for transfer." *Volkswagen II*, 545 F.3d at 314 n.10; *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (noting that "the plaintiff's choice of venue corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue"); *Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N.A., Inc.*, No. 6:11cv34, slip op. at 5-7 (E.D. Tex. Apr. 19, 2012).  Accordingly, a plaintiff's decision to file in this District "places a significant burden on [Defendants] to show good cause for transfer," a burden that this Court does not take lightly.  *Volkswagen II*, 545 F.3d at 314 n.10;

*Lake Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc.*, No. 2:10cv216 JRG, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012).

### c.  Private Interest Factors

The Toyota Defendants have moved to sever the claims against Gulf States and argue that if such claims were severed, the cases could have originally been brought in the Eastern District of Michigan.  *See* MTN AT 4.  AMV does not appear to dispute Defendants' assertion.  The Court now turns to a discussion of the convenience factors outlined in *Volkswagen I*.

### i.      The Relative Ease of Access to Sources of Proof

For this factor to weigh in favor or transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof.  To meet this burden, the Toyota Defendants must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties.  *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08cv211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009); *see also Invitrogen v. Gen. Elec. Co.*, No. 6:08cv113, 2009 WL 331889, at *3, (E.D. Tex. Feb. 9, 2009).

As stated above, the Toyota Defendants maintain that it is more convenient to access sources of proof in the transferee forum due to the presence of TTC, Aisin, Denso, Gentex, and prior art inventors.  Engineers at TTC participated in, or have relevant knowledge of, the development and implementation of many of the accused products.  *See e.g.*, MINCE DECL. AT 1.  However, the Toyota Defendants neglect to initially identify particular witnesses with relevant knowledge.  Therefore, the Court hesitates to give weight to these witnesses.[7]  *See U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co., Ltd.*, No. 6:12cv398, 2013 WL 1363613, at *3 (E.D.

---

[7] Similarly, the Toyota Defendants state that Toyota USA witnesses with relevant business and sales knowledge are in Torrance, California.  MTN AT 12.  However, Defendants fail to specifically identify any of these witnesses.

Tex. April 2, 2013); *Ivera Med. Corp. v. Hospira, Inc.*, No. 6:10cv545, 2011 WL 1882277 at *2 (E.D. Tex. May 17, 2011) (giving no weight to unidentified witnesses); *Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*, No. 6:09cv270, 2010 WL 4238879, at *4-5 (E.D. Tex. Oct. 27, 2010) (same).

Eventually, however, the Toyota Defendants do identify specific witnesses employed by TTC or Toyota N.A. that have relevant knowledge of the accused technology.[8]  Yet, these witnesses are supervisors that "sign off on those documents that are prepared [], for example, the engineering specifications or the drawings."  *See* TABAR DEPO AT 28:5-14, EX. C, ATTACHED TO RESPONSE; *see also id.* at 100:3-9; 117:5-9; 127:23-128:8.  An examination of the record before the Court indicates that the witnesses that were identified did not design, write the specifications, or draw the accused product for which they have supervisory responsibility; nor did these witnesses necessarily test the accused product(s).  *See id.* at 28:15-30:10; 31:23-32:20; 117:10-13.  It appears that these supervisors are not the most material witnesses in light of the statements made in the Mince Declaration proffered by Defendants.  *See e.g.*, MINCE DECL. AT ¶¶ 4-9 (stating that TTC engineers have specific knowledge of the accused features).

The Toyota Defendants also note that eleven prior art witnesses reside in Michigan.  MTN AT 9 (specifically identifying prior art inventors in Michigan).  These witnesses are listed as inventors on patents cited and relied upon as prior art in the previously litigated Michigan actions.  *Id.*  While the patents at issue in the above-styled cases relate to the patents from the Michigan litigations, it is unclear whether the prior art inventors are relevant or material to the patents currently in suit; while the patents-in-suit may claim priority to some of those previously litigated, it is undisputed that each of the asserted patents have unique specifications and intrinsic

---

[8] In its reply, the Toyota Defendants identified Messrs. Ochiai, Ellison, Carmack, Curry, Demming, and Hada as specific Toyota witnesses.  REPLY AT 4.  Further, the Toyota Defendants cite to a deposition transcript offered as an exhibit attached to Plaintiff's response.

evidence.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) ("A district court should assess the relevance and materiality of the information the witness may provide."). Further, Defendants do no more than state the whereabouts of these prior art inventors; Defendants do not contend that there will be attempts to procure deposition or trial testimony of these witnesses to show their relevance and knowledge of the prior art in relation to the patents-in-suit.

It does seem, however, that the bulk of the design and development of the accused features occurred in Japan, with support from TTC or Gentex in Michigan.  MTN AT 12; REPLY AT 4; *See e.g.*, TABA DEPO AT 36:24-39:6; 52:3-8; 113:2-5; *see also* MINCE DECL. AT 2-3 (stating co-Defendant Gentex "worked on aspects of the accused SmartBeam technology," an accused feature).  As a result, relevant technical documents are located in both Michigan and Japan.[9] TABA DEPO AT 52:3-21; 86:7-20; 130:23-132:4.  It is important to note, however, that TTC also has offices in California, Arizona and Washington, D.C.  EX. K, ATTACHED TO MTN.  Thus, TTC documents could be in any of these locations, in addition to Michigan.  *See e.g.*, TABA DEPO AT 9:13:11:1.

Defendants further argue that TTC worked with supplier Denso to "develop the accused Safety Connect, telematics technology and collision safety systems," and with Aisin to develop "accused seat-weight sensing and occupant classification technology" in Michigan.  MTN AT 8; MINCE DECL. AT 2-3.  However, deposition testimony indicates that the accused features developed and manufactured in conjunction with Denso and Aisin likely occurred in Japan, and

---

[9] While there is a presumption that the bulk of relevant evidence comes from the defendant(s), the parties have not argued that relevant documents are in the possession of manufacturers like Toyota Texas, Toyota Kentucky, or Toyota Indiana.  *See Genentech*, 566 F.3d at 1345.  Further, the parties have proffered no information as to where these entities are headquartered or incorporated.  As for Toyota N.A., Defendants claim it has facilities in Michigan, but exhibits show that Toyota N.A. is located in Kentucky.  EX. K, ATTACHED TO MTN.

further, the associated documents are also located in Japan.  TABA DEPO AT 33:12-16; 34:11-13; 35:7-36:1; 85:24-86:15; 114:4-10; 116:9-12.

Given the record before the Court, it is unclear where the bulk of the relevant documents are located: Japan or Michigan.  Nevertheless, it appears that the majority of U.S.-based technical documents are located in Michigan.  Therefore, this factor slightly favors transfer.

### ii.      The Availability of Compulsory Process to Secure Attendance of Witnesses and the Cost of Attendance for Willing Witnesses

The availability of compulsory process factor favors transfer if the majority of non-party witnesses are located within the Eastern District of Michigan.  *See Volkswagen II*, 545 F.3d at 316.  To date, Defendants have not identified non-party witnesses, other than the prior art inventors noted above.[10]  *See* MTN AT 9.  However, it is unclear whether these prior art witnesses are located in the Eastern District of Michigan, and further, the Toyota Defendants do not seem to argue that the transferee district would have compulsory power over these witnesses.  *See* MTN AT 11-12.   Therefore, this factor is neutral.

As noted above, the Court has declined to weigh the convenience of the prior art witnesses in its analysis due to their questionable relevance and materiality.  Likewise, the late-identified Toyota witnesses do not factor into the convenience analysis for the reasons stated above.  Therefore, the cost of attendance for willing witnesses is neutral.

### iii.     Judicial Economy

Although judicial economy is not among the list of enumerated factors, it can be a "paramount consideration when determining whether a transfer is in the interest of justice." *Volkswagen II*, 565 F.2d at 1351.   The Court considers judicial economy according to the

---

[10] Defendants also identify the inventor of the asserted patents: Dr. David Breed.  MTN AT 3.  Dr. Breed apparently resides in Florida and New Jersey.  *Id.*  However, the parties do not argue the convenience of this witness as it pertains to the transferee or transferor forums.  Without more information, the Court declines to assume the convenience of one forum over another under the circumstances.

situation that existed at the time the action was initiated. *See Hoffman*, 363 U.S. at 343 (indicating motions to transfer venue are to be decided based on "the situation which existed when the suit was instituted."); *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) ("[A] district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed.").

The Toyota Defendants identify five publicly available decisions on closely related patents that have been adjudicated in the Eastern District of Michigan. MTN AT 5.  Defendants note that "many of the patents asserted here claim priority to those patents, some are parents to those patents, and some claim priority to the same patent applications as those patents." *Id.* Defendants further point out that judges in the transferee district have previously construed many of the same claim terms at issue here. *Id.* at 5-6.  The problem, however, is that (1) the patents asserted in the Eastern District of Texas are not the same as those litigated in the Eastern District of Michigan; (2) Federal Circuit law indicates that many of the Michigan actions are too far in the past to assume that the judges who have had experience with the related patents are still familiar with the material; and (3) despite the overlap in claim terms, the construction of such terms depends on unique specifications and intrinsic records.  Thus, judicial economy would not be served by transfer.

The Federal Circuit has repeatedly discussed considerations of judicial economy in relation to the convenience analysis under § 1404(a), concluding that considerations of judicial economy alone do not preempt the convenience of the parties.  *In re Morgan Stanley*, 417 Fed. Appx. 947, 949 (Fed. Cir. 2011) ("This court twice recently considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue.") (discussing *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010) and *In re*

*Verizon*, 635 F.3d 559 (Fed. Cir. 2011)).   For example, in *In re Morgan Stanley*, the court granted petitions for writs of mandamus to transfer cases from the Eastern District of Texas to the Southern District of New York, despite the transferor court's familiarity with two of the asserted patents.  *Morgan Stanley*, 417 Fed. Appx. at 948-50.  The court concluded that (1) it was far more convenient to litigate the actions in the transferee forum; (2) half of the asserted patents were not asserted in the prior litigation; and (3) aside from the general technology-at-issue, there was no relation between the prior suit and the accused products in the later action.  *Id.* at 949.  In light of such conclusions, the Federal Circuit reasoned that "the proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation." *Id.* at 949.

Moreover, some of the claims at issue were construed five or more years ago.  Two of the *Markman* decisions from previously litigated cases in Michigan were issued in 2004.[11]  ALAVI DECL. AT 3, ATTACHED TO RESPONSE.  The remaining *Markman* opinions were issued in 2008 and 2009.[12]  *Id.* at 4.  Further, three different judges presided over the four previous actions in the Eastern District of Michigan: Judges Lawrence Zatkoff, Nancy Edmunds, and Robert H. Cleland. *Id.* at 3-4.  While Defendants cite some opinions from the transferee forum that address the validity of some of the related patents—one opinion issued as late as 2 years ago[13]—the claim construction opinions in more than half the cases were issued five years ago or more, making any assertions of familiarity with the related patents in the transferee forum tenuous.  *See Verizon*, 635 F.3d at 562 (concluding the trial court had no familiarity with the patent-in-suit, despite the trial court's previous experience *involving the same patent-in-suit* more than five years before);

---

[11] *Auto Techs. Int'l v. Delphi Corp.*, No. 2:03cv71368-LPZ (E.D. Mich. Sept. 29, 2004); *Auto Techs. Int'l v. TRW Vehicle Safety Sys. Inc.*, No. 2:02cv73572-NGE (E.D. Mich. Aug. 4, 2004).
[12] *Auto Techs. Int'l v. Siemens VDO Auto Corp.*, No. 2:06cv15756 (E.D. Mich. Nov. 25, 2008); *Auto Techs. Int'l v. Delphi Corp.*, No. 2:08cv11048 (E.D. Mich. Sept. 11, 2009).
[13] *Auto Techs. Int'l v. Delphi Corp.*, 776 F. Supp. 469 (E.D. Mich. 2011).

*see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1344, 1346 (Fed. Cir. 2010) (discussing familiarity with the patents in terms of claim construction).  To the extent the Court needs to consult the Michigan opinions, the Court can do so.  Again, it is important to note that none of the patents-in-suit were previously asserted in the Eastern District of Michigan.[14]

Finally, judicial economy will not be served by transfer simply because some of the claim terms in dispute overlap with those previously construed in the Eastern District of Michigan.  As stated above, five years or more have passed since many of the claim construction opinions were issued.  Moreover, the Court is persuaded that any overlapping claim terms may require new analysis, taking into account the materials that were not in the record before the Michigan courts, e.g., the specifications and intrinsic evidence unique to each patent.  AMV has indicated that the Michigan courts have provided differing constructions for the same claim terms, and further, that these constructions depended on the context of the specific technology claimed, e.g., an airbag, or the specifications for each patent.  RESPONSE AT 3-8.  Thus, any court would likely have to familiarize itself with the prosecution history, specification, and technology of the asserted patents.  *See Verizon*, 635 F.3d at 562 (dismissing the idea that the previous court had familiarity with the patent-in-suit, in part, because it would have to familiarize itself with the reexamination materials that were not part of the record in the prior suit).

Accordingly, considerations of judicial economy and efficiency will not be served by transfer.  Not only are many of the claim construction opinions five years or older, but none of the asserted patents were previously at issue in the Michigan actions.  Moreover, any construction of claim terms in dispute will require review of materials that were not previously

---

[14] Of note, however, are co-pending actions—simultaneously filed with the Toyota actions—in the Eastern District of Texas where many of the same patents are at issue.  *See e.g.*, *American Vehicular Sciences LLC v. BMW Group, a/k/a BMW AG*, et al., No. 6:12cv411 (E.D. Tex.).  Because patents have been commonly asserted against the Toyota and BMW Defendants, these parties are scheduled for common claim construction hearings.

before the Michigan courts.  Thus, either forum would be required to spend a considerable amount of time and resources to familiarize itself with the patents-in-suit.  Consequently, this factor does not favor transfer.

### d.  Public Interest Factors

Local interest favors transfer under these circumstances.  Defendant Gentex is located in the transferee forum, as is Toyota affiliate TTC.  Both of these entities are responsible, at least in part, for the design of the accused features.  Because the patent infringement actions call into question the work and reputation of those in Michigan, the local interest factor favors transfer. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

However, the administrative difficulties flowing from court congestion are neutral. Defendants cite statistics showing that the Eastern District of Michigan is five months faster than the Eastern District of Texas in disposing of civil cases from filing to trial.  MTN AT 8.  To the contrary, AMV cites statistics showing that the Eastern District of Texas is two months faster than the transferee forum.  RESPONSE AT 10.  However, "the parties' reliance on general civil statistics provides the Court with little guidance as to the speed with which patent cases reach trial."  *U.S. Ethernet Innovations*, 2013 WL 1363613, at *5 (citing *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No 6:10cv688, 2011 WL 5117850,  at *4 (E.D. Tex. Oct. 27, 2011)).  Thus, the factor is neutral.  The parties agree the remaining public interest factors are neutral.

In sum, only two of the convenience factors weigh in favor of transfer.  However, on balance, the weight afforded to these factors does not amount to a clear showing that convenience would be best served by transfer.  Much of Defendants' arguments hinge on the Michigan courts' prior experience with the related patents.  Yet, upon further scrutiny, the Court

has determined that transfer would not preserve judicial resources.  Accordingly, Defendants'
motion to transfer is denied.

### III.    Motion to Stay

In addition, Defendants have moved to stay all deadlines in all of the above-styled actions
pending resolution of the Toyota Defendants' motion to transfer.  Having resolved Defendants'
request for transfer above, the request to stay all deadlines is now moot.  Therefore, the Motion
to Stay is denied.

### CONCLUSION

The Toyota Defendants have failed to show that transfer to the Eastern District of
Michigan would be clearly more convenient.  The evidence presented indicates that the local
interest factor favors transfer and the ease of access to sources of proof slightly favors transfer.
The remaining convenience factors are neutral.  Moreover, judicial economy will not be
benefitted by transferring this action.  Ultimately, the balance of these factors does not amount to
a clear showing that convenience would be better served by transfer.

Although litigation is always an inconvenience, "the clearly more convenient" standard
addresses situations where the disparity in convenience is readily apparent.  In § 1404 analysis, it
is not enough for Defendants to show that there is some convenience in litigating the case in a
different forum.  Rather, Defendants must show that convenience in the transferee venue clearly
outweighs the convenience in the transferor venue.  Here, Defendants have failed to meet that
burden.  Therefore, the Defendants' request to transfer to the Eastern District of Michigan is
denied.

In addition, Defendants' request to sever and stay the claims against Gulf States is
denied.  Because Defendants have framed their severance arguments in the context of § 1404(a),

and the request for transfer is denied, the Court, in its discretion, declines to sever and stay the claims against Gulf States.  Accordingly, the Toyota Defendants' Opposed Motion Pursuant to 28 U.S.C. § 1404(a) and Rules 21 and 42, Fed. R. Civ. P., (1) to Transfer all Claims Against the Toyota Defendants to the Eastern District of Michigan and (2) to Sever and Stay Claims Against Gulf States Toyota Inc. is **DENIED**.

Having denied Defendants' request to transfer and sever and stay the claims against Gulf States, Defendants' Motion to Stay is **DENIED**.

**So ORDERED and SIGNED this 12th day of June, 2013.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE